EXHIBIT A

TO

JOINT MOTION

TO APPROVE FLSA SETTLEMENT AND TO ENTER JUDGMENT

**CONFIDENTIAL SETTLEMENT AGREEMENT & GENERAL RELEASE**

A.  **Parties.** The parties to this Agreement are:

- Rosalie Ann Feickert ("Plaintiff"); and

- Neurological Physicians of Arizona, Inc., William Grainger, Jeffrey Shy, Catherine C. Kapoor, and their respective marital communities (collectively, "Defendants").

B.  **Lawsuit.**

- On May 1, 2017, Plaintiff filed a complaint in the United States District Court for the District of Arizona entitled *Rosalie Ann Feickert v. Neurological Physicians of Arizona, Inc., et al.*, Cause No. 2:176-cv-01290-JJT (the "Lawsuit").

- Plaintiff alleges that Defendants violated both the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, by failing to compensate her for certain overtime work, and under A.R.S. § 23-353 for failing to pay accrued sick and vacation pay.

C.  **Settlement.**

- To avoid the continued expense of litigation, and not as an admission of liability, Defendants agree to pay the sums set forth herein, and Plaintiff has agreed to accept said sums in full and final settlement of any and all amounts she alleges are due to her.

- The settlement was arrived at through arms-length negotiations, and each party was represented by counsel during the negotiations.

**TERMS OF SETTLEMENT AGREEMENT**

1.  **Judgment.** The Parties will stipulate to the entry of Judgment in favor of Plaintiff as follows, but not to record or execute on the Judgment as set forth in section (c) below:

   a.   Judgment will be for the total gross sum of THIRTY-ONE THOUSAND and 00/100 DOLLARS ($31,000.00) ("Settlement Funds") with interest thereon at the rate of ten percent per annum to be paid as set forth in Paragraph 2 below.

b.    Judgment will be against (1) Neurological Physicians of Arizona, Inc.; (2) William Grainger and the marital community consisting of himself and Victoria Grainger; (3) Jeffrey Shy and the marital community consisting of himself and Philip Norman Swanson; and (4) Catherine C. Kapoor and the marital community consisting of herself and Bhupendra Rai Kapoor.

c.    So long as Defendants make the payments set forth in Paragraph 2 and 3 of this Agreement, Plaintiff agrees not to record or otherwise execute on the Judgment.

d.    If a payment is not received within ten (10) days of the dates set forth in Paragraph 2 and 3, Plaintiff's counsel shall notify Defendants' counsel. If payment is not made within ten (10) days after such notice, Plaintiff may record the Judgment.

e.    After all payments set forth in Paragraph 2 and 3 have been received by Plaintiff, Plaintiff will file a Satisfaction of Judgment with the Court.

2.    **Defendants' Payments.** Defendants agree to pay the total gross sum of THIRTY-ONE THOUSAND and 00/100 DOLLARS ($31,000.00) in the amounts and in the manner set forth in the remainder of this Paragraph 2. Defendants will withhold appropriate state and federal taxes for all back wage payments in an annualized amount (that is, the taxes taken out will be the same as if she was paid her regular salary over time), and reflect the amounts on Plaintiff's 2017 W2 form. Payments shall be made as follows:

a.    By October 2, 2017: Back wages in the gross amount of TWENTY THOUSAND DOLLARS and 00/100 CENTS ($20,000.00).

b.    The payment will be made payable to Rosalie Ann Feickert and mailed on or before the date indicated to her attorney, Christopher Houk.

3.    **Plaintiff's Attorney Fees and Costs.** The Parties agree that Defendants will pay Plaintiff's attorneys' fees in the amount of ELEVEN THOUSAND DOLLARS and 00/100 CENTS ($11,000.00) by October 2, 2017.

4.    **Defendants' Attorney Fees and Costs.** The Parties stipulate that the Defendants shall be responsible for their own attorneys' fees and costs.

5.    **Filing of Stipulated Motions for Approval of Settlement Agreement & Release, and for Dismissal of Lawsuit with Prejudice.** Plaintiff will cause her attorney to sign and file in the United States District Court, District of Arizona, within fifteen (15) business days after Plaintiff's attorney has received the payments described in Paragraph 2 and 3 and the checks have cleared, a Stipulation for Dismissal with Prejudice. Plaintiff will also take and direct her attorney to take any other actions needed to cause the Lawsuit to be dismissed with prejudice.

Further, in exchange for and as an express condition of receiving any consideration provided for under this Agreement, the parties understand and agree their obligations under this Agreement are expressly conditioned upon the Court's approval of this Agreement. In that regard, Plaintiff agrees that subject to the Defendants' approval, she

shall authorize and direct her attorney of record to prepare, execute and file a Joint Motion to Approve FLSA Settlement and Release Agreement, necessary to effectuate the Court's approval. This Agreement will not be effective until: (1) the Agreement is fully executed by each party and returned to each counsel of record; and (2) an order approving this Agreement is filed and entered in the Action. If the Court does not approve one or more terms of the Agreement, or the Agreement (with respect to one or more such terms) is materially modified or reversed, then this Agreement shall be canceled, terminated, and shall have no force or effect. If Court approval does not occur, the Parties to this Agreement shall be deemed to have reverted to their respective status as of the date and time immediately prior to the execution of this Agreement.

6.  **Plaintiffs' Release.** Except as set forth herein, Plaintiff and her spouse, James Feickert, release and forever discharge Defendants and Released Parties (as defined below) from any and all claims, whether presently known or unknown, including, without limitation, all claims that were raised or could have been raised in the Lawsuit, and all claims arising out of or in connection with Plaintiff's employment by or termination with Defendants prior to the date Plaintiff signs the Agreement. This release also includes, but is not limited to, any and all claims arising under federal, state, or local law, statute or regulation or common law, including, without limitation:

    a.  any claims of employment discrimination, harassment, and/or retaliation, including all claims under state or federal civil rights laws, including Section 1983, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Arizona Civil Rights Act, the Sarbanes-Oxley-Act, the Employee Retirement Income Security Act, the Equal Pay Act of 1963, the federal Worker Adjustment and Retraining Notification ("WARN") Act and the Fair Labor Standards Act, the Arizona Civil Rights Act, as amended, Ariz. Rev. Stat. §§ 41-1401 et seq., Arizona Equal Wages Law, Ariz. Rev. Stat. § 23-341, Arizona Wage Payment Law, Ariz. Rev. Stat. §§ 23-350 et seq., the Arizona Minimum Wage Act, Ariz. Rev. Stat. §§ 23-362 et seq., the Arizona Occupational Health and Safety Act, Ariz. Rev. Stat. §§ 23-401 et seq., the Arizona Right to Work Act, Ariz. Rev. Stat. §§ 23-1301 et seq., the Arizona Drug Testing of Employees Act, Ariz. Rev. Stat. §§ 23-493 et seq., the Arizona Medical Marijuana Act, Ariz. Rev. Stat. §§ 36-2801 et seq.,

    b.  any claims arising out of any constitutional provision, statute, ordinance, regulation, or executive order relating to employment, termination of employment, discrimination or retaliation in employment, wages, compensation, or employee benefits,

    c.  any claims of employment discrimination, harassment and/or retaliation under the Age Discrimination in Employment Act ("ADEA") of 1967, (29 U.S.C. § 626, as amended by the Older Workers' Benefit Protection Act ("OWBPA") of 1990 (29 U.S.C. Section 621, et seq.)),

    d.  any claim arising under the Arizona Employment Protection Act, Ariz. Rev. Stat. § 23-1501,

e.    any claim for contractual obligations,

f.    any claim for wrongful discharge,

g.    any claim for retaliatory discharge of employment, whistleblowing, termination in violation of public policy, breach of contract, promissory estoppel, infliction of emotional distress, fraud, misrepresentation, interference with contract or prospective economic advantage, defamation, negligence, personal injury, and invasion of privacy,

h.    any claims arising out of any alleged legal restrictions on Defendants' right to terminate their employees,

i.    claims for payment of wages (including alleged overtime) and other compensation,

j.    claims for breach of contract,

k.    claims under common law,

l.    claims for damages, emotional pain and harm,

m.    claims for any and all liability, claims, demands, actions, causes of action, suits, grievances, debts, sums of money, agreements, promises, damages, back and front pay, costs, expenses, and remedies of any type, and

n.    claims for recovery of attorneys' fees and costs, except as provided in, and subject to, the fees described in Paragraph 3.

"Released Parties" as used herein refers to Defendants and also to any Defendant's present, directors, employees, agents, officers, partners, affiliates, insurers, successors, spouses, representatives and attorneys. All claims released hereunder are referred to collectively as the "Released Claims." Plaintiff represents and warrants that when she signed this Agreement, no claim released herein was pending against any of the Released Parties other than the Claims raised in the Lawsuit. Plaintiff certifies and acknowledges that the consideration provided to her pursuant to this Agreement is in addition to any consideration that she would otherwise be entitled to receive.

7.    **Defendants' Release.** Defendants and the Released Parties hereby irrevocably and unconditionally release and forever discharge Plaintiff and her spouse James Feickert with respect to any and all claims, demands, actions, liabilities, damages and/or causes of action of any nature, both past and present, known and unknown, foreseen and unforeseen, at law, by statute, or in equity, which Defendants have or which could be asserted against Plaintiff and her spouse James Feickert.

8.    **ADEA and OWBPA Waiver:** Without limiting the scope of this Agreement in any way, Plaintiff certifies and acknowledges that:

a.  The release set forth in Paragraph 6 herein acts as and constitutes a knowing and voluntary waiver by Plaintiff of any claims Plaintiff has or may have against the Defendants or any of the Released Parties under the ADEA as amended;

b.  The release set forth in above does not apply to or govern any rights or claims that might arise under the ADEA after the date this Agreement is signed by Plaintiff;

c.  The consideration provided to Plaintiff by Defendants pursuant to this Agreement is in addition to any consideration that Plaintiff would otherwise be entitled to receive;

d.  Plaintiff has been and hereby is advised in writing to consult with an attorney prior to signing this Agreement;

e.  Plaintiff has been provided a full and ample opportunity consisting of a period of at least twenty-one (21) days to study and consider this Agreement, and any changes to this Agreement, whether material or immaterial, will not and do not restart or extend this 21-day period;

f.  To the extent that Plaintiff takes less than twenty-one (21) days to study, consider, and execute this Agreement:

    i.   Plaintiff has had sufficient time and a sufficient opportunity to study and consider this Agreement with independent legal counsel of Plaintiff's own choosing before the expiration of the twenty-one (21) day time period;

    ii.  Plaintiff expressly, knowingly, and voluntarily has executed this Agreement before the expiration of the twenty-one (21) day time period and waives any additional time to study, consider, and execute this Agreement;

g.  Plaintiff is aware of her right to revoke this Agreement at any time within the seven (7) day period following the date Plaintiff signs this Agreement, and that this Agreement will not become effective or enforceable with regard to Plaintiff until after the seven (7) day revocation period expires without Plaintiff exercising her right to revoke this Agreement;

h.  Notice of revocation as provided under this section must be made in writing to the Defendants' undersigned counsel within the seven (7) day revocation period; and

i.  Plaintiff will relinquish any right to receive or have any of the consideration or money specified in this Agreement if Plaintiff exercises her right to revoke this Agreement as set forth herein. If Plaintiff does so revoke, her counsel shall return the Settlement Funds immediately upon revocation.

9.  **No Reemployment.** Plaintiff (who is not currently employed with Defendants as of the date of this Agreement) waives any right to, and agrees never to seek to enter into, any future employment or independent contracting relationship with Defendants.

10. **Confidentiality of Agreement.** As used herein:

   a. "Agreement Information" means the existence or any term of this Agreement, all communications between Plaintiff and Defendants, or between their attorneys, about any possible or actual term of this Agreement, and all offers or proposals made by Plaintiff or the Defendants, or their attorneys, with respect to settling or resolving any disputes between the Parties, including but not limited to the fact that the Defendants offered or made any payment to Plaintiff to dismiss the Lawsuit or to enter into this Agreement, except the information which is in the public record.

   b. "Authorized Party" means Plaintiff and Defendants, Plaintiff's and Defendants' attorneys, Plaintiff's and Defendants' spouses, any professional retained by Plaintiff or Defendants to prepare their tax returns or bankruptcy filings, or any religious, medical or psychological counselors who are under a professional obligation not to disclose what Plaintiff and Defendants communicate to them.

   c. The Parties agree that they will not disclose, disseminate or publicize, or cause to be disclosed, disseminated or publicized, any of the Agreement Information to any person, organization, association, or other entity, except if sought by subpoena, deposition, court order, or demand by a governmental or regulatory agency, or to enforce the agreement. If the Parties are asked what happened with the Lawsuit, or any other disputes between them, their response shall be limited to stating that such matters were "resolved." The Parties agree that this confidentiality provision is an express and absolute condition of this Agreement, is bargained for consideration for this Agreement and is not a mere recital, and that any violation of the terms and conditions of this confidentiality provision shall constitute a material breach of this Agreement and shall cause Plaintiff or Defendants to suffer substantial and irreparable harm.

   d. Defendants shall release only the following information about Plaintiff upon request for a reference: dates of employment, job title, and reason for separation being resignation.

11. **No Disparagement.** The Parties shall not engage in any conduct that involves the posting or publishing of knowingly or maliciously false information, statements or remarks. If the Parties believe the other is in breach of this provision, they will give the Breaching Party (1) notice of the nature of the breach in writing with specificity and (2) 15 days from receipt of the writing to cure the breach. During the 15-day cure period, the Non-Breaching Party will not bring an action against Breaching Party. If the Breaching Party cures the breach, the Non-Breaching Party will not bring an action against the Breaching Party.

12. **Miscellaneous Agreements.**

   a. The terms of this Agreement will be binding upon the heirs, representatives, successors, and assigns of the parties, and will inure to the benefit of the heirs, representatives, successors, and assigns of the parties.

b.    It is the intention of the parties in executing this Agreement and in giving and receiving the consideration called for by this Agreement that this Agreement will be effective as a full and final accord, satisfaction and release of any and all matters described herein.

13.   **General Provisions.**

a.    <u>Entire Agreement.</u> This Agreement contains the entire agreement among the parties and supersedes any and all prior agreements, promises, representations, or inducements concerning the subject matter of this Agreement.

b.    <u>Fees and Costs.</u> If any lawsuit or other legal proceeding or action is brought relating to, arising out of, or to enforce any of the provisions of this Agreement, the prevailing party may be entitled to collect its reasonable attorneys' fees and costs incurred in connection therewith, in addition to any other remedy to which it might be entitled.

c.    <u>Waivers.</u> No waiver of any provision of this Agreement will constitute a waiver of any other provision of this Agreement, nor will any waiver constitute a continuing waiver. No waiver of any provision of this Agreement will be binding on the Parties unless it is executed in writing by the party making the waiver.

d.    <u>Law and Forum.</u> This contract is governed by and will be enforced according to the laws of the State of Arizona. Any action brought to enforce any term of this contract must be brought in the Arizona Superior Court, County of Maricopa.

14.   **Informed Consent.** The parties acknowledge and represent that:

a.    They have fully and carefully read this Agreement prior to execution;

b.    They have been fully apprised by their attorneys and/or advisors of the legal effect and meaning of this document and all terms and conditions thereof;

c.    They have had the opportunity to negotiate as to any and all terms hereof;

d.    The execution and delivery of this Agreement will not constitute or be construed as an admission of any liability or wrongdoing on the part of any of the parties released and such liability is expressly denied;

e.    They are executing this Agreement voluntarily, free from any undue influence, coercion, duress, or menace of any kind; and

f.    Each party, with the assistance of competent counsel, has negotiated this Agreement, any uncertainty or ambiguity should not be construed for or against either party, and the headings are inserted for convenience of the parties only.

IN WITNESS WHEREOF, the parties execute this agreement on the dates set forth.

    d.    <u>Law and Forum</u>. This contract is governed by and will be enforced according to the laws of the State of Arizona. Any action brought to enforce any term of this contract must be brought in the Arizona Superior Court, County of Maricopa.

14.    **Informed Consent.** The parties acknowledge and represent that:

    a.    They have fully and carefully read this Agreement prior to execution;

    b.    They have been fully apprised by their attorneys and/or advisors of the legal effect and meaning of this document and all terms and conditions thereof;

    c.    They have had the opportunity to negotiate as to any and all terms hereof;

    d.    The execution and delivery of this Agreement will not constitute or be construed as an admission of any liability or wrongdoing on the part of any of the parties released and such liability is expressly denied;

    e.    They are executing this Agreement voluntarily, free from any undue influence, coercion, duress, or menace of any kind; and

    f.    Each party, with the assistance of competent counsel, has negotiated this Agreement, any uncertainty or ambiguity should not be construed for or against either party, and the headings are inserted for convenience of the parties only.

IN WITNESS WHEREOF, the parties execute this agreement on the dates set forth.


_____
ROSALIE ANN FEICKERT

Date:_____


_____
WILLIAM GRAINGER

Date:_____


_____
JEFFREY SHY

Date:_____IL April 2017_____


_____
CATHERINE C. KAPOOR

Date:_____9 - 11 - 2017_____


NEUROLOGICAL PHYSICIANS OF ARIZONA, INC.

By:_____
    WILLIAM GRAINGER

ROSALIE ANN FEICKERT

Date: _____

WILLIAM GRAINGER

Date: _____9–11–17_____

JEFFREY SHY

Date: _____

CATHERINE C. KAPOOR

Date: _____

NEUROLOGICAL PHYSICIANS OF ARIZONA, INC.

By: _____

WILLIAM GRAINGER

Date: _____9–11–17_____

VICTORIA GRAINGER

Date: ____9/11/17_____

PHILIP NORMAN SWANSON

Date: _____

BHUPENDRA RAI KAPOOR

Date: _____

JAMES FEICKERT

Date: _____

_Rosalie Ann Feickert_

_____
ROSALIE ANN FEICKERT

Date: _9/10/17_

_____
WILLIAM GRAINGER

Date:_____

_____
JEFFREY SHY

Date:_____

_____
CATHERINE C. KAPOOR

Date:_____

NEUROLOGICAL PHYSICIANS OF ARIZONA, INC.

By:_____
    WILLIAM GRAINGER

Date:_____

_____
VICTORIA GRAINGER

Date:_____

_____
PHILIP NORMAN SWANSON

Date:_____

_____
BHUPENDRA RAI KAPOOR

Date:_____

_James D Feickert_

_____
JAMES FEICKERT

Date: _9/10/17_

Date:_____

_____
VICTORIA GRAINGER

Date:_____


_____
PHILIP NORMAN SWANSON

Date:_____

_____*Bhupendr R Kapor*_____
BHUPENDRA RAI KAPOOR

Date:_____09 - 14 - 2007_____


_____
JAMES FEICKERT

Date:_____

Date:_____

_____
VICTORIA GRAINGER

Date:_____

_____
PHILIP NORMAN SWANSON

Date: 11 September, 2017

_____
BHUPENDRA RAI KAPOOR

Date:_____

_____
JAMES FEICKERT

Date:_____